(No. 93-CV-1727—)

*In re* APPLICATION OF MARIA BUENO and EMELY DELGADO

*Opinion filed December 27, 1995.*

MARIA BUENO, *pro se,* and Legal Assistance Foundation of Chicago (DEVEREUX BOWLY, of counsel), for Claimants.

JIM RYAN, Attorney General (PAUL H. CHO, Assistant Attorney General, of counsel), for Respondent.

OPINION

Sommer, C.J.

This claim comes before the Court on two different crime victims compensation applications. The Claimant, Maria Bueno, the mother of the deceased victim, and the Claimant, Emely Delgado, mother of the deceased victim's son, Rafael Padilla, Jr., seek compensation pursuant to the Crime Victims Compensation Act (hereinafter referred to as the "Act") 740 ILCS 45/1, et seq. (1992).

On November 16, 1993, this Court issued an opinion finding that Claimant Bueno incurred funeral and burial expenses in the amount of $3,369. This Court ordered that the sum of $3,000 be awarded as compensation for funeral expenses. An award to Claimant Delgado was denied. The opinion included a finding that Claimant Delgado had not substantiated her claim that the victim's minor son, Rafael Padilla, Jr., was dependent on the victim for support.

On December 17, 1993, Claimant Delgado, by and through her attorney, appealed the decision. She asserted that evidence would show that the victim's son was dependent upon the victim for support. She also disputes the portion of the opinion that awards $3,000 in funeral expenses to Claimant Bueno, contending that the funeral was paid for by her, Claimant Delgado, and that Claimant Bueno provided incorrect or fraudulent documents.

A hearing was scheduled for October 14, 1994, at which time, Claimant Delgado appeared with her attorney. Her attorney acknowledged that she was not eligible

for reimbursement of funeral and burial expenses because she was not a relative. The following documents were offered by the Claimant and made a part of the record:

1. A copy of the 1989 U.S. Individual Income Tax Return Form 1040A signed by Rafael Padilla showing income of $3,459 and declaring Giovanni Padilla to be a dependent.

2. A copy of a Certificate of Live Birth indicating that Rafael Padilla was the father of Rafael Giovanni Padilla, Jr., born on December 19, 1983.

The Assistant Attorney General indicated that his office would review the employment records in relation to the loss of support claim and would investigate the funeral and burial expenses.

A continued hearing was held on March 15, 1995, at which both Claimants appeared and testified. On the issue of funeral and burial expenses, the Attorney General's office confirmed that Caribe Funeral Home provided two contradictory affidavits. One indicates that Maria Bueno paid the funeral and burial expenses and the other indicates Emely Delgado paid the expenses. Claimant Delgado is not related to the victim; therefore, she would not be eligible for reimbursement. (740 ILCS 45/10.1(c) (1992).) The Assistant Attorney General ("AAG") indicated that Ms. Bishop from Caribe told him that she did not know why there were two different affidavits. The AAG subpoenaed her for the hearing; however, she did not appear. She did not send documents to the AAG.

Claimant Bueno testified that she was the mother of the deceased victim and he lived with her. She presented four receipts, numbers 2415, 2418, 2419 and 2707, from Caribe Funeral Home, indicating that money was received

from Maria E. *Perez*. Claimant Bueno stated that Perez was her maiden name. The receipts are dated July 14, 1992, through August 18, 1992, and total $3,180. She presented a receipt, dated June 15, 1994, from Cast Monuments, Inc., showing that $1,649.50 was paid by Maria *Padilla*, whom she said was her. She had a copy of a cashier's check made payable to Cast Monuments, Inc. in the amount stated on the receipt. The remitter on the check was Maria Bueno.

The AAG presented a copy of the funeral director's report, signed by Julius (or Julia) Bishop, and a statement of services indicating that $3,369 was received from Maria *Padilla*, mother of Rafael Padilla. The document appeared to have been altered; i.e., certain items scratched out, with additions, and signatures. "Padilla" was crossed out and "Bueno" was printed in. A copy of a receipt was attached, number 2867, dated August 30, 1993, showing receipt of $3,369 from Maria Padilla, with "Padilla" crossed out and "Bueno" printed in. This receipt is different than the receipts presented by Ms. Bueno at the hearing.

Claimant Delgado testified that the deceased victim was the father of her son. She stated that neither she nor Claimant Bueno paid for the funeral. A collection was gathered from the victim's friends, grandmother, and other family from his father's side. She presented a receipt from Caribe of $3,369 from Emely Delgado. She stated that the victim's stepmother, Natalia Molina, was involved in collecting the money. Claimant Bueno argued with Natalia in relation to the collection of the money; and Natalia gave some of the collection to Claimant Bueno and some to Caribe. She stated that Claimant Bueno did not pay the funeral expense out of her own pocket but from a collection taken from the victim's friends and family.

Claimant Delgado testified her name was put on the receipt because she and Claimant Bueno entered into an oral agreement. She presented a signed funeral director's report, dated September 11, 1992, showing that Emely Delgado paid $3,369 for funeral and burial expenses. Claimant Delgado believes that the victim's grandmother paid $1,000, his aunt's husband paid $580, his aunt bought the suit, and the rest was contributed by his friends.

In relation to the oral agreement between the Claimants, Claimant Delgado stated that the receipt would be put in her name and the $3,000 reimbursement would be split three ways: $1,000 for the victim's son, $1,000 for the monument, and $1,000 for Claimant Bueno. Claimant Bueno "went behind my back, went to the funeral director, and asked her for a receipt." When she learned that Claimant Bueno was going to receive $3,000 for funeral and burial expenses, she asked Claimant Bueno whether she was still going to give her $1,000 for her son, and was told "No." That is why she got a lawyer and appealed the order.

Claimant Bueno said that Claimant Delgado was lying. She stated that she used money from social security to pay for the monument. She receives disability payments from the Social Security Administration. She said that the money paid to Caribe came from her. She said her friend gave her $600. His name was "Sammy" but she did not know his last name. She said "Natie," her son's stepmother, collected $1,500. She also collected approximately $500 from friends but forgets how much she collected. She claims to have paid $600.

Claimant Delgado's counsel indicated she would stipulate that Ms. Bueno paid $600 of the burial and funeral expenses. Claimant Bueno then claimed she paid more than $600. She asked for a continuance to "bring all the papers."

On the issue of loss of support, Claimant Delgado testified that her son, Rafael Giovanni Padilla, Jr., born on December 19, 1983, was the son of the victim. She was unsuccessful in obtaining later tax returns, beyond the 1989 return, of the victim. In 1990 and 1991 he was working at a temporary place, but was still supporting the boy. He gave her cash for the support every week, usually between $50 to $125 per week. One time it was $485. He spent a lot of time with his son.

The employer report indicates that at the time of his death the victim was employed by Cole's Appliance and Furniture Company from March, 1992, to the date of his death. The victim received his first check on March 21, 1992.

At the conclusion of the hearing, the record was left open for either Claimant to present any further documents. Claimant Bueno wanted to present a list of persons who gave her money but had left it at home. She was instructed to mail it together with a letter if she desired. Subsequent to the hearing, Claimant Bueno mailed a letter together with a letter from Jorge L. Crespo and a garbled listing of contributions. (English translations were provided by the Commissioner's secretary).

This is a troublesome case. Claimant Delgado admits that she filed false information in relation to the funeral and burial expenses. She contends that it was done in furtherance of an agreement with Claimant Bueno. Claimant Bueno denies that this agreement took place. Claimant Bueno's testimony is expressly inconsistent. At times she states that she paid all of the funeral and burial expenses, and at other times she states that she paid $600 of the funeral and burial expenses. The funeral home's records are also inconsistent. The funeral home either negligently reported receipt of the same funds, or has

participated in the presentation of false information as alleged by Claimant Delgado.

This Court finds that Claimant Bueno's presentation of false information, i.e., she paid all of the expenses, in light of her testimony that the bulk of the money came from a collection, is sufficiently inconsistent to bar her from any recovery. (740 ILCS 45/20.) Public policy is best served by discouraging the presentation of false information.

On the loss of support claim, the same public policy concerns expressed above apply to Claimant Delgado's provision of false information on the funeral expenses. However, the support that would be provided would be for the benefit of the victim's minor child, aged eight years and 205 days as of the date of the victim's death. The record does establish that the victim was employed for some time during the six-month period prior to his death. The total net earnings for the six-month period was $2,379.86, or an average monthly net income of $396.64. There is no documentation to show that he was actually providing support for his son. Claimant Delgado stated that neither she nor the victim maintained a checking account and the victim would give her cash ranging from $50 to $125 per week. No witnesses were presented to corroborate these payments. Her counsel indicated that the victim was providing an average of $250 per month. This amount is 64 percent of his average monthly net income. Claimant Bueno did not dispute that the victim was making cash payments to support his son. She did state that the victim was living with her at the time of his death; therefore, it may be reasonable to conclude that his own living expenses might not be as high if he were living on his own.

This Court finds that Claimant Delgado has not established that support was being provided. It is therefore

ordered that this Court's order of November 16, 1993, is amended and compensation is hereby denied to both of the Claimants.